IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,

        Plaintiff,

v.                 //    CRIMINAL ACTION NO. 1:14CR29
                                  (Judge Keeley)

PETRUS HAWKINS,

        Defendant.

## ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 18]

Pending before the Court is the magistrate judge's report and recommendation ("R&R") (dkt. no. 18) concerning the motion of the defendant, Petrus Hawkins ("Hawkins"), to suppress gun evidence (Dkt. No. 8). For the reasons that follow, the Court **ADOPTS** the R&R in its entirety.

### I.

On April 1, 2014, a grand jury indicted Hawkins for being a convicted felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). On May 7, 2014, Hawkins filed a motion to suppress the .45 caliber pistol that is the basis of the indictment in this case. Pursuant to 28 U.S.C. § 636, the Court referred the motion to the Honorable John S. Kaull, United States Magistrate Judge, who conducted a suppression hearing on May 28, 2014. The magistrate judge entered an R&R on May 30, 2014, recommending that the Court deny Hawkins' motion to suppress.

**ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 18]**

Hawkins filed timely objections to the R&R on June 11, 2014.  The motion is now ripe for review.

## II.

The Court reviews <u>de</u> <u>novo</u> any portions of a magistrate judge's R&R to which a specific objection is made, 28 U.S.C. § 636(b)(1), but may adopt, without explanation, any of the magistrate judge's recommendations to which no objections are filed.  <u>Solis v. Malkani</u>, 638 F.3d 269, 274 (4th Cir. 2011) (citing <u>Camby v. Davis</u>, 718 F.2d 198, 200 (4th Cir. 1983)).  In the absence of a timely objection, the Court need "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." <u>Diamond v. Colonial Life & Acc. Ins. Co.</u>, 416 F.3d 310, 315 (4th Cir. 2005) (citation omitted).  The failure to file specific objections to the magistrate judge's recommendations waives any appellate review of the factual and legal issues presented. <u>Page v. Lee</u>, 337 F.3d 411, 416 n.3 (4th Cir. 2003); <u>see also</u> <u>Thomas v. Arn</u>, 474 U.S. 140, 150 (1985).

## III.

Hawkins' motion to suppress challenges the constitutionality of the police officers' stop and subsequent search of the vehicle in which he was a passenger. (Dkt. No. 20).  Hawkins contends that, because that stop was in violation of the Fourth Amendment, the gun

seized from the vehicle must be suppressed.  In his R&R, Magistrate Judge Kaull found that the traffic stop and subsequent search complied with the Fourth Amendment and recommended that the Court deny the motion to suppress.  Hawkins objects to the R&R on the basis that the officers did not have reasonable suspicion of criminal activity occurring within the vehicle, and thus, had no lawful basis to extend the stop "beyond the time it takes to issue a ticket." (Dkt. No. 23).

**A.**

On June 27, 2013, Officer Garrett Melan ("Officer Melan"), a police officer employed by the City of Morgantown, was on patrol in Sabraton, West Virginia.  At approximately 12:35 a.m., he observed a yellow Dodge vehicle driving at an excessive rate of speed.  He proceeded to follow the vehicle as it traveled out Route 7 toward the I-68 entrance ramp, in order to identify its exact speed.  He determined that the vehicle was traveling 18 miles over the posted 35 mph speed limit for Route 7 in Sabraton.

Officer Melan initiated a traffic stop as the vehicle was nearing the Pierpont exit located off of I-68. He approached the vehicle and asked the driver, Tiffany Cooper ("Cooper"), if she knew she was speeding.  Cooper responded that she was upset because her brother had taken her car and failed to return it.  Officer

## ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 18]

Melan became concerned that Cooper may be the victim of a domestic violence situation or was a hostage of Hawkins, the passenger in the vehicle, given Cooper's rapid rate of speech and eye movement, puffy eyes, and irrelevant responses to his questions.  He then took Cooper's registration and identity information back to his cruiser to have it processed.

Upon learning of Officer Melan's stop through radio traffic, Officer Aaron Dull ("Officer Dull"), a fellow police officer employed by the City of Morgantown, traveled to the scene  to offer support.  Officer Melan briefed Officer Dull regarding his concerns for Cooper's welfare.  As the more experienced officer of the two, Dull then took over the investigation.

Officer Melan approached the stopped vehicle and requested that Cooper exit it so that Officer Dull could question her.  As she was exiting the vehicle, Officer Dull recognized Cooper as an individual he had seen associating with drug dealers in downtown Morgantown.  Additionally, he remembered pulling her over for a prior traffic stop and finding a large sum of money located in her vehicle.  Thus, rather than asking Cooper questions concerning her welfare, Officer Dull asked a standard set of drug related questions.

## ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 18]

Officer Dull asked Cooper whether there were any drugs located inside the car.  She responded that there may be traces of marijuana in the vehicle, as she had smoked the drug earlier in the day.  Officer Dull then asked Officer Melan to bring him Hawkins for questioning.

Officer Dull proceeded to ask Hawkins the same drug related questions he had asked Cooper.  Hawkins denied there were any drugs in the car and stated the vehicle belonged to his baby's mother.

Based on his questioning of Hawkins and Cooper, Officer Dull determined that a canine "free air drug sniff" was necessary. Officer Dull had his certified drug dog, Arco, sniff the exterior of the vehicle.  Arco alerted the officers that there was contraband located inside the vehicle.  Officer Dull subsequently conducted a warrantless and unconsensual search of the vehicle.  He discovered remnants of marijuana located in Cooper's purse.  He also located a .45 caliber pistol in the passenger side glove box.

Officer Dull then directed that Cooper and Hawkins be detained pending further investigation.  The pistol was run through NCIC and found to be stolen.  Hawkins identity was also run through NCIC, and he was determined to be a convicted felon.  Given that

information, Hawkins was taken into custody and charged with being a felon in possession of a firearm.[1]

**B.**

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV. The "[t]emporary detention of individuals during the stop of an automobile by police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of [the Fourth Amendment]." Whren v. United States, 517 U.S. 806, 809–10 (1996).

As such, the familiar "dual inquiry" of Terry v. Ohio, 392 U.S. 1 (1968), governs the legality of police conduct in routine traffic stops. United States v. Guijon-Ortiz, 660 F.3d 757, 764 (4th Cir. 2011) (citing United States v. Rusher, 966 F.2d 868, 875 (4th Cir. 1992)). In order to survive judicial scrutiny, the police officer's conduct during a traffic stop must be both "justified at its inception," Rusher, 966 F.2d at 875, and "sufficiently limited in scope and duration." Guijon-Ortiz, 660 F.3d at 764 (quoting Florida v. Royer, 460 U.S. 491, 500 (1983) (plurality opinion)).

---

[1] Cooper was neither charged nor cited for any offense.

**ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 18]**

**C.**

In his objections to the R&R, Hawkins does not contest the legality of the initial traffic stop.[2] He does, however, object to the extended scope and duration of the stop.

A police officer's actions during a lawfully initiated traffic stop must be "reasonably related . . . to the circumstances that justified the [stop]." Rusher, 966 F.2d at 875 (quoting Terry, 392 U.S. at 20). Accordingly, traffic stops must be duly limited in both scope and duration. United States v. Digiovanni, 650 F.3d 498, 507 (4th Cir. 2011). Thus, the Court must consider "whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." Guijon-Ortiz, 660 F.3d at 764. To prolong a stop "beyond the scope of a routine traffic stop," an officer "must possess a justification for doing so other than the initial traffic violation that prompted the stop in the first place." United States v. Branch, 537 F.3d 328, 336 (4th Cir. 2008). This requires "either the driver's consent or a 'reasonable suspicion' that illegal activity is afoot." Id.

_____

[2]Finding no clear error, the Court adopts the magistrate judge's findings regarding the legality of the initial traffic stop.

**ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 18]**

In the course of an ordinary traffic stop, an officer may justifiably detain "the offending vehicle for as long as it takes to perform the traditional incidents of a routine traffic stop." Branch, 537 F.3d at 335. These "traditional incidents" include "requesting a driver's license and vehicle registration, running a computer check, and issuing a ticket." Digiovanni, 650 F.3d at 507 (citation omitted). An officer may also request identification from any of the vehicle's passengers, United States v. Soriano-Jarquin, 492 F.3d 495, 500 (4th Cir. 2007), and "order the driver as well as any passengers to get out of the car pending completion of the stop." United States v. McGee, 2:11-191, 2011 WL 5119528, at *3 (S.D. W. Va. Oct. 27, 2011) (citations omitted).

Hawkins contends that the officers did not have reasonable suspicion that criminal activity was afoot, and thus, had no legal basis to prolong the traffic stop past the time it takes to issue a ticket. The government responds that the circumstances surrounding the stop gave rise to reasonable suspicion of criminal activity. The government presents the more persuasive argument.

Upon initiating the stop, Officer Melan asked Cooper to produce her license and vehicle registration, which are requests within the scope of a routine traffic stop. Digiovanni, 650 F.3d at 507 (citation omitted). While speaking with Cooper, Officer Melan

8

noticed her nervous demeanor, puffy eyes, rapid speech and hand movements, and irrelevant answers to his questions. These observations gave rise to a reasonable suspicion that Cooper may be in danger. Thus, additional questioning to ensure Cooper's safety was justified in this instance. Branch, 537 F.3d at 336.

Upon questioning Cooper, Officer Dull determined that she was not in danger, but rather may be engaged in drug related activities. He based this determination on his knowledge of Cooper's history of associating with drug dealers and her admission that there may be traces of marijuana located inside the vehicle. Consequently, he had the authority to initiate a canine drug inspection. See United States v. Place, 462 U.S. 696, 707 (1983).

The inspection established that there was contraband located inside the vehicle. In such instances, a warrantless search of the vehicle's interior, including the glove compartment and trunk, may be conducted. Id; see also Florida v. Royer, 460 U.S. 491, 506 (1983); and United States v. Allen, 159 F.2d 832, 839 (4th Cir. 1998). Thus, Officer Dull's search following the canine drug inspection was constitutional.

The Fourth Circuit examined a similar situation in United States v. Mason, 628 F.2d 123 (4th Cir. 2010). There, the officer stopped a vehicle for having tinted windows. Upon observing the

9

**ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 18]**

driver sweating, acting abnormally, and failing to properly answer questions, the officer determined that a canine drug inspection was necessary.  The inspection revealed 10 kilograms of cocaine powder located in the trunk of the vehicle.  The Fourth Circuit concluded that the driver's abnormal behavior gave rise to a reasonable suspicion of criminal activity, thus, permitting the officer validly to extend the scope and duration of the traffic stop. <u>Id</u>. at 131.

Similarly, an extension of the scope and duration of the traffic stop was warranted here, given Cooper's demeanor, Cooper's and Hawkins' answers to the officers' questions, and Arco's indicating that there was contraband located inside the vehicle. Thus, the traffic stop at issue did not violate the Fourth Amendment, and suppression is not warranted. <u>Branch</u>, 537 F.3d at 336.

### IV.

For the reasons discussed, the Court **ADOPTS** the magistrate judge's report and recommendation (dkt. no. 18) and **DENIES** Hawkins' motion to suppress (dkt. no. 8).

It is so **ORDERED**.

The Court directs the Clerk to transmit copies of this Order to counsel of record.

DATED: June 13, 2014.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE